UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| K7 DESIGN GROUP, INC. and K7 DESIGN GROUP, LLC, <br><br> Plaintiffs, <br><br> -against- <br><br> FIVE BELOW, INC., <br><br> Defendant. | : Case No. _____ <br> : <br> : <br> : **COMPLAINT** <br> : <br> : JURY TRIAL DEMANDED <br> : <br> : <br> : <br> : |

Plaintiffs, K7 Design Group, Inc. and K7 Design Group, LLC, by their attorneys, as and for their Complaint against defendant, Five Below, Inc. ("Five Below"), allege as follows:

## INTRODUCTION

1. This action arises from an enormous miscalculation by the defendant, Five Below, which grossly over-ordered more than $2 million worth of hand sanitizer and soap in the midst of a worldwide pandemic from the plaintiffs, K7, a family-owned business. Five Below placed substantial orders to take advantage of a worldwide spike in demand for hand sanitizer and soap. But Five Below apparently ordered way more than it could sell. The reason was simple – Five Below and other retailers placed massive orders of hand sanitizer and soap and supply ultimately outstripped demand. Rather than accept responsibility for its misjudgment, Five Below has improperly sought to shift the blame to its supplier, K7.

2. Once Five Below realized it had over-ordered not only did it refuse to pay for or to accept delivery of the hand sanitizer and soap that K7 had manufactured specifically for Five Below, it denied having placed the order despite the robust paper trail confirming the orders.

3. Because Five Below reneged, K7 has been left with a large quantity of hand sanitizer and soap for which K7 has no other use. And, after it refused to take delivery, Five Below

sought to use its market power to force K7 to absorb losses that, both in contract and equity, should be borne by Five Below.

4. In early 2020, the Novel Coronavirus ("COVID-19") quickly spread around the globe, ravaged millions, and imposed enormous demands on health systems. COVID-19 led people to take extraordinary precautions to avoid infection and spread.

5. Before the COVID-19 pandemic, hand sanitizer and soap, common consumer products, were plentiful in retail establishments and widely available for purchase. Supply and demand were in balance. With the onset of the pandemic, public health authorities advised people that to avoid contracting the virus, they should exercise good hygiene including, amongst other things, frequently washing or sanitizing their hands. Hand sanitizer and soap quickly flew off store shelves and became largely unavailable by the spring of 2020. Supply and demand were suddenly out of balance.

6. Against this backdrop, Five Below, with more than 800 retail stores, moved quickly to fill its customers' dire need for hand sanitizer and soap. Upon information and belief, to capture supply, Five Below placed orders with multiple suppliers and manufacturers.

7. Five Below approached K7 to produce large quantities of hand sanitizer and soap so that Five Below could provide it to its customers throughout the United States.

8. K7 is a New York-based, family-owned manufacturer and distributor of consumer products sold under the "Ultra Defense" brand label. K7 has spent three decades in the health and wellness space, producing private-label and branded products for many of the nation's largest retailers, as well as for warehouse clubs and smaller local establishments. By March 2020, K7 had been producing hand sanitizer and related products for many years.

9. As described herein, in the spring of 2020, Five Below committed to purchase more hand sanitizer and soap than it could use and then proceeded to shift to K7 the economic burdens that flowed from Five Below's misjudgment of its ability to absorb the goods it ordered into either Five Below's storage facilities or its supply chain.

10. As a result, Five Below breached and repudiated its purchase commitment, leaving K7 with more than $2 million worth of hand sanitizer and soap that Five Below has refused to accept and for which it has refused to pay. Five Below's breach seriously jeopardizes the continued viability of K7's business.

11. In addition to the damages K7 has suffered because of Five Below's refusal to pay for the goods it ordered from K7, K7 has incurred tens of thousands of dollars of storage fees for the product that it manufactured specifically to fulfill Five Below's order. K7 has put Five Below on notice on multiple occasions that its refusal to take delivery of the hand sanitizer and soap was adding to K7's losses. Nevertheless, Five Below has unjustifiably refused to take delivery of its product and has created an alternative universe in which it claims to have never ordered the hand sanitizer and soap. In so doing, Five Below has breached and repudiated its contractual commitment to accept and pay for the specially manufactured goods.

## THE PARTIES

12. Plaintiff, K7 Design Group, Inc. ("K7 Inc."), is a corporation duly organized and existing pursuant to the laws of the State of New York, with its principal place of business at 2433 Knapp Street, Brooklyn, New York 11235.

13. Plaintiff K7 Design Group, LLC (K7 LLC"), is a single member limited liability company duly organized pursuant to the laws of the State of Delaware, with its principal place of business at 2433 Knapp Street, Brooklyn, New York. K7 LLC is a wholly owned subsidiary of K7

Inc. The single member of K7 LLC is K7 Inc. K7 Inc. and K7 LLC are collectively referred to herein as "K7".

14. Upon information and belief, defendant, Five Below, Inc. ("Five Below"), is a corporation organized pursuant to the laws of the State of Pennsylvania with its principal place of business at 701 Market Street, Philadelphia, Pennsylvania 19106.

## JURISDICTION AND VENUE

15. The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(1) as it is between citizens of different States and the matter in controversy exceeds $75,000.

16. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to the claims occurred in this district.

## ALLEGATIONS COMMON TO ALL COUNTS

17. On April 24, 2020, Five Below reached out to K7 inquiring as to whether K7 "would be interested in working on a project for" Five Below. Five Below requested "a whole presentation of full size soap, full size antibacterial and travel antibacterial .... Think Bath and Body Works but with a Five Below twist."

18. On the very same day, K7 responded to the request indicating that it "would be delighted to put together a killer assortment of assorted hand sanis and soaps." K7 posed some questions as to timing.

19. On April 27, 2020, Five Below responded that the timing would be for fall but, "the sooner we could execute in stores the better."

20. Also on April 27, 2020, K7 requested additional information from Five Below on the project such as the dimensions of the store setups and the shapes of the bottles needed to determine what molds would be required.

21. On the same day, Five Below responded with the approximate dimensions of the store setups and agreed to use "in house" stock bottles for the program as opposed to creating new molds which would be more costly.

22. Also on April 27, 2020, K7 requested the projected quantity of product anticipated since the main ingredient in sanitizer was in short supply due to the pandemic and K7 wanted to secure enough of the ingredients to satisfy Five Below's order.

23. On April 28, 2020, K7 provided Five Below with a nine-page color proposal with imagery and styles for a line of hand sanitizers and soaps that were created specifically for Five Below.

24. On April 29, 2020, Five Below expressed its appreciation for the quick turn around on the proposal and requested the cost for each item.

25. The following day, K7 sent Five Below an Excel spreadsheet with the cost of each item that was contained in the proposal.

- 8 oz. Hand Sanitizer @ $2.10 per unit
- 8 oz. Hand Soap @ $2.10 per unit
- Light up case with hand sanitizer @ $2.50 per unit
- Hand Sanitizer with lip balm @ $1.30 per unit
- Scallop sleeve hand sanitizer @ $2.00 per unit
- Character assorted hand sanitizer @ $1.20 per unit

26. On May 1, 2020, Five Below advised K7 that it was reviewing the costs internally and would have an update the following week.

27. Also on May 1, 2020, Five Below requested the information regarding the percentage of alcohol content in the sanitizers and K7 responded the very same day.

28. Also on May 11, 2020, Five Below wrote to K7 exclaiming that senior management "absolutely loved" the presentation and "based on what we have already committed to," the plan was for the goods to be used for the spring market and the unit counts would be provided.

29. On the same day, K7 advised Five Below that because of demand, K7 needed to know the unit counts promptly in order to ensure the capacity to meet Five Below's deadlines.

30. On May 14, 2020, Five Below advised K7 that it did not have an individual breakdown by item but "would be looking at approximately 1.2M units" in total. By return email, K7 indicated that in order to put the order into production, it needed to know the exact counts on a time sensitive basis.

31. On the same day, Five Below provided a breakdown by product category and style and stated that there were a "couple [of] prices" that still needed to be worked out ("Ordered Products").

- Light up case with hand sanitizer – 100,000 units
- Hand sanitizer with lip balm – 100,000 units
- Scallop sleeve hand sanitizer – 100,000 units
- Character assorted hand sanitizer – 300,000 units

32. After an exchange of emails, on May 14, 2020, K7 asked Five Below to "please confirm the costs [previously provided] are acceptable so we can begin and not risk losing our production."

33. On the same day, Five Below requested that K7 "please confirm based on the units…provided."

34. The email exchange on May 14 concluded with K7 stating "this is confirmed and [we] will work with [our] team in getting these in the pipeline." Thus, a contract was born.

35. On May 15, 2020, K7 requested case pack and assortment breakdown for the Ordered Products which Five Below confirmed by email dated May 18, 2020.

36. On May 21, 2020, K7 confirmed that "it successfully [was] able to pull the production trigger and secure the necessary space for all of our items and assortment ..." and requested the paperwork for vendor and item setup.

37. On July 15, 2020, K7 was provided its vendor number from Five Below (3580).

38. On July 20, 2020, K7 sent Five Below the updated New Item Forms for each of the Ordered Products.

39. On August 17, 2020, K7 confirmed that it had sent samples of the Ordered Products to Five Below, that it had completed testing of the EDI system (Electronic Data Interchange), and that K7 was "officially in the production stage ready to accept and receive EDI transmits."

40. On September 17, 2020, K7 advised Five Below that the Ordered Products were available earlier than anticipated and in K7's warehouses. K7 inquired as to when the EDI documents would be received so that the Ordered Products could be allocated amongst the stores.

41. Having received no response, on September 29, 2020, K7 followed up with Five Below and confirmed that the Ordered Products had arrived at K7's warehouse and K7 was awaiting EDI instructions as to allocation and shipment.

42. After apologizing for the delay in responding, on September 30, 2020, Five Below acknowledged that it had over-ordered hand sanitizer and soap and found itself in the unenviable position of supply out-distancing demand. As a result, Five Below was unable to take in all of the Ordered Products which K7 made specifically for Five Below.

43. Although Five Below contended that it was "completely committed" to taking all the travel size items, the shipment of those items would have to be accomplished over an extended period of time.

44. With regard to the larger size hand sanitizers and soap, Five Below could not commit to taking those items until it reviewed the sales of the holiday assortments.

45. The inadequate response at the salesperson level forced K7 to elevate the issue to Below Five's "leadership team," which it did on November 2, 2020, and recounted the history of Five Below requesting the Ordered Products.

46. After much prodding, a telephone call was finally held on November 18, 2020, in which Five Below conceded that it had purchased too much product but nevertheless stated that it could not accept the Ordered Products because a purchase order was not issued.

47. Nevertheless, as a follow up, Five Below asked for samples of the Ordered Products, which had been previously sent in August, and the expiration date of the Ordered Products.

48. K7 sent additional samples on December 1, 2020 and provided the expiration date (2023).

49. Having heard nothing further from Five Below, K7 reached out on December 7, 2020 to follow up.

50. Again, receiving no response from Five Below, K7 reached out again on December 11, 2020.

51. Finally, Five Below responded on December 11, 2020 stating that it was sending out the travel sanitizers "to be tested for the 70% requirement of alcohol," even though there was no such prior requirement.

52. Five Below also "reiterate[ed] we are at this time unable to take any of the travel anti-bac. We will continue to assess but I continue to recommend you try to sell to other accounts as it is your brand. I know this is not the response you were looking for but the retail challenges in this category remains."

53. K7 responded on the same day stating that it would have been happy to provide testing results if they were requested, that there was no alternate market for the Ordered Products, as Five Below was previously informed, and that Five Below's inability to take the Ordered Products is not an adequate response.

54. Once again, Five Below did not respond and K7 reached out on December 12, 2020.

55. On December 22, 2020, Five Below responded that it was still waiting for the testing, but "[o]nce again, I must reiterate we are not able to take any of the product."

56. K7 responded the same day by inquiring as to the purpose of the testing if "you don't want to take the merchandise ordered by 5 Below," and stating that if Five Below's position does not change, K7 would have no choice but to exercise its legal rights.

57. The same day, Five Below provided the testing results and stated that it did "not appreciate [K7's] tone.'

58. In a follow up email the same day, Five Below stated, for the first time, that it was "not able to place an order for this product as it does not meet applicable standards."

59. Finally, by email dated January 5, 2021, Five Below reiterated that it was not prepared to accept any of the Ordered Products, which were specifically manufactured for it, because Five Below "neither issued a purchase order for the product, nor did it pass [Five Below's] testing protocols."

60. In conclusion, Five Below issued a not so veiled threat that if K7 pursued its legal rights, which it clearly had a right to do especially given the untoward action of K7, that "it will assuredly have a negative impact on [Five Below's] ability and desire to work with K7 or its affiliates in the future."

## FIRST COUNT

### (Breach of Contract)

61. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 60 hereof as if fully set forth herein.

62. Despite Five Below's repeated assurances to K7, Five Below has now refused to take delivery of any of the Ordered Products, the agreed upon price of which is approximately $2 million.

63. Five Below has breached and repudiated the contract by failing and refusing to accept the Ordered Products.

64. As a result of Five Below's breach and repudiation, K7 has been left with unaccepted Ordered Products at an aggregate agreed price of $2 million for which K7 has incurred and paid, and continues to incur and pay storage charges that mount each day and that already total in the tens of thousands of dollars.

65. Five Below has manifested no intention to accept delivery of, or to pay for, the Ordered Products.

66. Instead of admitting it had ordered too much hand sanitizer and soap and working cooperatively with K7 to come up with a solution, Five Below has manufactured excuses to avoid its obligations in an effort to shift blame for its own error.

67. Due to the worldwide COVID-19 pandemic and consequent widespread and accelerated ramp-up of production by suppliers to meet heightened demand for hand sanitizer and soap, the market for the Ordered Products presently is saturated.

68. K7 has made reasonable attempts to mitigate its damages by finding alternative buyers for the Ordered Products.

69. However, as a result of market conditions, K7 has no channel through which to sell the Ordered Products to alternate buyers at anywhere close to the price Five Below agreed to pay at the height of the sanitizer shortage.

70. K7 has complied with all the terms and conditions of the contract.

71. By reason of the foregoing breach of contract, K7 is entitled to recover from Five Below the unpaid aggregate agreed price of the Ordered Products, in the amount of $2 million, plus the cost of storing Five Below's goods, pre-judgment interest, and other damages.

## SECOND COUNT

### (Promissory Estoppel)

72. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 71 hereof as if fully set forth herein.

73. On or about May 14, 2020, Five Below communicated to K7 that Five Below would purchase from K7 600,000 units of hand sanitizer and soap (the "Purchase Commitment").

74. Five Below knew (because it was informed) or reasonably should have known when it made the Purchase Commitment that K7 would manufacture the Ordered Products specifically for Five Below.

75. K7 reasonably relied on the Purchase Commitment.

76. In reliance on the Purchase Commitment, by on or about September 17, 2020, K7 had manufactured the entire quantity of Ordered Products necessary to fill the Purchase

Commitment, including many thousands of bottles, bottle caps, and labels necessary to unitize the Ordered Products for the consumer market, as Five Below had ordered.

77. In communications with K7 after making the Purchase Commitment, Five Below continued to express its expectation and desire to receive the Ordered Products.

78. Despite Five Below's Purchase Commitment and subsequent communications with K7, Five Below thereafter refused to accept the Ordered Products.

79. K7 relied to its detriment on Five Below's Purchase Commitment, in that K7 produced the Ordered Products, specifically at Five Below's request and without an alternate purchaser.

80. By the time Five Below reneged on its Purchase Commitment, K7 had already manufactured all of the Ordered Products, including bottles, bottle caps, and labels.

81. Five Below has refused to take delivery of, or to pay for, the Ordered Products in the amount of not less than $2 million.

82. As a result, K7 has been damaged in an amount not less than $2 million, plus the cost of storing Five Below's merchandise, pre-judgment interest, and other damages, which K7 will prove at trial.

83. Basic fairness and justice require that Five Below compensate K7 for the loss K7 incurred by relying on Five Below's broken promise.

84. K7 demands a trial by jury with regard to all the issues in this case.

WHEREFORE, K7 demands judgment against Five Below as follows:

1. On Count I, in an amount to be determined by the Court, but in no event less than $2 million, plus the cost of storing Five Below's goods, and pre-judgment interest;

2. On Count II, in an amount to be determined by the Court, but in no event less than $2 million, plus the cost of storing Five Below's goods, and pre-judgment interest;

3. For the costs and disbursements of this action; and

4. For such other and further relief as the Court deems just and equitable under the circumstances.

ECKERT SEAMANS CHERIN & MELLOT, LLC
*Attorneys for Plaintiffs*


By: */s/ Frank R. Emmerich Jr.*
    Frank R. Emmerich Jr., Esq.
    Sarah D. Boutros, Esq.
Two Liberty Place
50 South 16th Street
Philadelphia, Pennsylvania 19102
(215) 851-8409
Email: femmerich@eckertseamans.com


SILLS CUMMIS & GROSS P.C. (Of Counsel)


By: */s/ David B. Newman*
    David B. Newman, Esq.
101 Park Avenue, 28th Floor
New York, New York 10178
(212) 643-7000
Email: dnewman@sillscummis.com

Dated:      March 24, 2021

7925140 v1