IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| K7 DESIGN GROUP, INC. AND K7 DESIGN GROUP, LLC,<br>    Plaintiffs,<br><br>v.<br><br>FIVE BELOW, INC.,<br>    Defendant. | CIVIL ACTION<br><br><br>NO. 21-1406 |

# MEMORANDUM OPINION

In the early days of the COVID-19 pandemic, Defendant Five Below, Inc. approached K7 Design Group, Inc. and K7 Design Group, LLC (together, K7 or Plaintiff) to discuss a large order of hand sanitizer and soap. Five Below maintains that the relationship was merely that—a preliminary discussion of a potential order that never materialized. K7, on the other hand, alleges that Five Below placed an order to the tune of $2 million, which order Five Below repudiated upon realizing it had ordered far more hand sanitizer than it could sell. Five Below moves to dismiss the contract claims brought by K7. For the reasons that follow, the motion will be denied.

## I. STANDARD OF REVIEW[1]

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. (12)(b)(6). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[1] There is jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a) because Five Below is a citizen of Pennsylvania, K7 is a citizen of New York, and the amount in controversy exceeds $75,000.

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a complaint, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Blanyar v. Genova Prods. Inc.*, 861 F.3d 426, 431 (3d Cir. 2017) (internal quotations marks and citations omitted).

## II. MATERIALS TO BE CONSIDERED

As a preliminary matter, Five Below argues that the Court should look beyond the Complaint to consider the complete chain of emails between the parties and Five Below's Vendor Manual. In ruling on a motion to dismiss, in addition to the allegations in the Complaint and exhibits attached thereto, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that as "an exception to the general rule" that the court may consider only the pleadings, "a document *integral to or explicitly* relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." (alteration in the original) (internal quotation marks and citation omitted)).

The parties' email correspondence, but not the Vendor manual, fall within the "narrowly defined types of material" that may be considered without converting a motion to dismiss to one for summary judgement. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). As K7 concedes, its breach of contract and promissory estoppel claims are explicitly based on the exchange of emails between K7 and Five Below, and that correspondence is integral to those claims. The Complaint quotes extensively from the emails attached to the

Motion to Dismiss, the authenticity of which are undisputed. The Vendor Manual, on the other hand, is external to the allegations in the Complaint and will not be considered. K7's contract claims are not based on the Vendor Manual, which sets forth supplemental terms and conditions related to, *inter alia*, shipping, routing, packaging, testing, labeling, and insurance. To the extent the Complaint refers to paperwork found in the Vendor Manual or actions taken in compliance with the Manual, such allegations are not, in the context of this motion to dismiss, integral to K7's breach of contract and promissory estoppel claims. In fact, it is undisputed that Five Below did not send K7 the Vendor Manual until *after* K7 alleges a contract was formed on or about May 14th.[2]

### III. FACTS

The relevant facts are drawn from the Complaint and the email correspondence attached to Five Below's motion to dismiss. *See In re Burlington*, 114 F.3d at 1426. Five Below is a national retailer of discount consumer goods, and K7 is family-owned manufacturer and distributor of consumer goods, including hand sanitizer and soap. On April 24, 2020, Five Below solicited an initial proposal from K7 regarding the sale of hand sanitizer and soap products. To that end, the parties discussed via email details such as timing, assortment of products, supply chain concerns, and price. On May 11, 2020, Five Below responded enthusiastically to K7's proposal and expressed an interest in moving forward with the order. In the following days, K7 conveyed increasing urgency in nailing down the details as it was in the midst of allocating production capacity for the season. On May 14, 2020, Five Below provided a breakdown by product style for an anticipated order of 600,000 travel size hand sanitizers but

---

[2] Consequently, Five Below's invocation of the parole evidence rule based on the integration clause in the Vendor Manual and contention that the Vendor Manual requires the issuance of a Purchase Order as a condition precedent to a breach of contract claim will not be addressed herein.

3

sought to further negotiate on price. The same day, K7 responded that the quoted price was final and asked Five Below for "confirmation that we can go ahead and submit these in the production pipeline right away" and to "please confirm the costs are acceptable so we can begin and not risk losing our production." Five Below requested that K7 "please confirm based on the units . . . provided," to which K7's representative replied: "Yes this is confirmed and I will work with my team in getting these in the pipeline."

The parties hammered out further details via email in the ensuing months. K7 confirmed the order was in production, requested vendor related paperwork, and mailed product samples; Five Below proceeded to set-up K7 as a vendor, including sending K7 its Vendor Manual and issuing K7 a vendor number. On September 17, 2020, K7 informed Five Below that the order was ready and requested shipping instructions. However, on September 30, Five Below informed K7 that it could not accept the items. Five Below thereafter repeatedly refused to accept the items, claiming that it did not issue a purchase order for them and that they did not pass Five Below's testing protocols.

## IV.  ANALYSIS

Five Below moves to dismiss K7's claims for breach of contract and promissory estoppel.[3] Five Below argues that K7 fails to state a claim for breach of contract because there was no mutual manifestation of an intent to enter a binding agreement nor sufficiently definite terms to enforce. Because the agreement as alleged is a contract for the sale and manufacture of

---

[3] Five Below also asserts that, because K7 Design Group, LLC signed the Vendor Manual acknowledgement form, K7 Design Group, Inc. is not the real party in interest, lacks standing to sue, and should be dismissed from the case. However, as explained *infra*, the Complaint adequately alleges that K7, Inc. entered a contract with Five Below via email for the sale of hand sanitizer products. Moreover, that K7, LLC—described in the Complaint as a wholly owned subsidiary of K7, Inc.—signed a form on behalf of its parent company does not deprive K7, Inc. of its interest in the case. *See Freedom Props., L.P. v. Lansdale Warehouse Co. Inc.*, 2007 WL 1683850, at *4 (E.D. Pa. June 7, 2007) (explaining that under Pennsylvania law the principal is the party to a contract entered by an agent).

goods, it is governed by Article 2 of the Pennsylvania Uniform Commercial Code, 13 Pa. Cons. Stat. § 2101 *et seq.*[4] Section 2204 of the Pennsylvania UCC, governing the formation of contracts, provides that a "contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." 13 Pa. Cons. Stat. § 2204(a). The Pennsylvania UCC has been interpreted consistently with the common law requirement of a mutual manifestation of an intent to be bound to form a contract. *See, e.g., ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 665 (3d Cir. 1998) ("It is by now hornbook law that the test for enforceability of an agreement is whether both parties have manifested an intention to be bound" (internal quotation marks and citation omitted)); *Reilly Foam Corp. v. Rubbermaid Corp.*, 206 F. Supp.2d 643, 650 (E.D. Pa. 2002) (explaining that an offer under the Pennsylvania UCC "has been defined based on common law principles as 'the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" (quoting *Bergquist Co. v. Sunroc Corp.*, 777 F. Supp. 1236, 1248 (E.D. Pa. 1991))).

According to Five Below, the email exchange between the parties reveals only preliminary negotiations regarding the possible future sale of hand sanitizer. *See ATACS*, 155 F.3d at 666 ("[I]t is well established that evidence of preliminary negotiations or a general agreement to enter a binding contract in the future fail as enforceable contracts" (citing *Goldman v. McShain*, 247 A.2d 455, 458 (Pa. 1968))). However, the Complaint plausibly alleges that Five Below placed and later repudiated a substantial order of hand sanitizer. Because "[a]n agreement sufficient to constitute a contract for sale may be found even though the moment of its making is

---

[4] The parties agree that Pennsylvania law applies. Indeed, the choice of law provision in the Vendor Manual provides that "[t]he laws of the State of Pennsylvania, without regard to Pennsylvania's choice of law principles, govern all matters arising out of or related to the Contract."

5

undetermined," K7 need not pinpoint the precise email that cemented the agreement. 13 Pa. Cons. Stat § 2204(b). On K7's reading, after negotiating the terms for weeks, K7 stressed the time sensitive nature of the deal asked Five Below for a firm confirmation. Both parties thereafter confirmed the price and quantity quoted by K7.[5] The parties' subsequent conduct—exchanging emails regarding the order, sending the Vendor Manual, issuing K7 a vendor number, K7 submitting vendor related paperwork and product samples—further supports K7's position that a contract was formed. *See* 13 Pa. Cons. Stat. § 2204(a); *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 445 (3d Cir. 2003) ("In a commercial transaction involving the sale of goods [under the Pennsylvania UCC], where the parties' performance demonstrates agreement, we look past disputes over contract formation and move directly to ascertain its terms.").

Five Below also moves to dismiss K7's promissory estoppel claim on the grounds that it was unreasonable for K7 to manufacture items based on Five Below's ballpark projections. Under Pennsylvania law, a "promise which the promisor should reasonably expect to induce action or forbearance on the part of the promise . . . which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Thatcher's Drug Store of W. Goshen, Inc. v. Consol. Supermarkets, Inc.*, 636 A.2d 156, 160 (Pa. 1994) (quoting Restatement (Second) Contracts § 90(1)). The Complaint alleges that K7

---

[5] Five Below points to apparent contradictions in the Complaint regarding whether Five Below ordered soap as well as hand sanitizer and the total value of Five Below's order as evidence that the agreement lacked sufficiently definite terms. K7's allegation that Five Below ordered 600,000 travel size hand sanitizers, divided into four sub-groups by product type, at the prices discussed and quoted via email, is sufficiently definite to be enforced. *See* 13 Pa. Cons. Stat § 2204(c) ("Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy."); *see also Reilly*, 206 F. Supp.2d at 651 (explaining that pursuant to the Pennsylvania UCC "contract formation depends on the manifestation of intent by the parties to be bound rather than the presence or absence of specific terms").

manufactured 600,000 units of hand sanitizer specifically for Five Below in reliance on Five Below's purchase commitment and subsequent assurances. Whether K7's reliance on the parties' email exchange in manufacturing the hand sanitizer for Five Below was reasonable is a question of fact for the jury. *See Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 208 (Pa. 2007) ("[J]ustifiable reliance is typically a question of fact for the fact-finder to decide, and requires a consideration of the parties, their relationship, and the circumstances surrounding their transaction.").

## V. CONCLUSION

For the foregoing reasons, Five Below's Motion to dismiss will be denied. An appropriate order follows.

BY THE COURT:

/s/Wendy Beetlestone, J.

_____

**WENDY BEETLESTONE, J.**